IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| SAMSHI HOMES, LLC, | ) | CASE NO. 10-37643-H3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |

MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Motion of Texas Community Bank for Relief from Automatic Stay of Act Concerning Property and Other Acts" (Docket No. 85). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Samshi Homes, LLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 3, 2010.

On the petition date, Debtor was in the process of building eight townhomes on one lot (the "Prospect Townhomes"), and held two other lots (the "Riverside Lot" and the "Calumet Lot") for future development. Debtor's principal, Vinay Karna, testified at the hearing on the instant motion that the Riverside

Lot and the Calumet Lot have been replatted for townhome development.

Karna testified that Debtor financed the land purchase and construction of townhomes with $800,000 contributed by Karna, and additional funds borrowed from Texas Community Bank ("TCB"). Debtor executed notes payable to TCB on September 15, 2006, in the original principal amount of $390,000 (TCB Exhibit 3), March 2, 2007, in the original principal amount of $1,210,686 (TCB Exhibit 1), on October 1, 2007, in the original principal amount of $377,325 (TCB Exhibit 2), and on September 25, 2008, in the original principal amount of $425,000 (TCB Exhibit 4).

Debtor executed deeds of trust, in favor of TCB, with respect to the Prospect Townhomes, the Riverside Lot, and the Calumet Lot, to secure Debtor's debts to TCB. The deeds of trust additionally provide for a collateral assignment of rents from the properties to TCB. (TCB Exhibits 5-8).

On December 29, 2010, TCB filed a proof of claim, in the amount of $2,416,737.97. Russell Barnett, a vice president of TCB, testified that the proof of claim does not include postpetition interest.

Two other entities, a taxing authority and a tax lien lender, have filed proofs of claim asserting security interests in the properties, in the amounts of $122,063.58 and $15,503.94,

respectively. (TCB Exhibits 23, 24). The amounts stated in these two proofs of claim do not include postpetition interest.

As set forth in this court's Memorandum Opinion (Docket No. 92) addressing cash collateral, Debtor twice sought and (with TCB's consent) obtained authority to use the cash collateral of TCB. Thereafter, TCB opposed Debtor's use of cash collateral. Although the budgets attached to the first two cash collateral orders did not provide for any cash collateral to be utilized for construction, and did provide for Debtor to pay ad valorem property taxes, Karna testified at the cash collateral hearing that he had used TCB's cash collateral to continue construction of the Prospect townhomes, and had made only one payment, in the amount of $7,000, for ad valorem taxes.[1] After the contested cash collateral hearing, this court denied Debtor's further use of TCB's cash collateral.

Karna testified that Debtor's income, in the amount of approximately $11,000 per month, has been deposited in Debtor's bank account.[2] He testified that Debtor has not spent TCB's cash

---

[1] Karna testified at the hearing on the instant motion that a payment of $3,300 per month is required in order to pay the current taxes on the properties.

[2] The court notes that Debtor's monthly operating reports indicate revenue of $7,805 in September, 2010, $3,709 in October, 2010, $10,460 in November, 2010, $8,592 in December, 2010, $14,561 in January, 2011, $8,832 in February, 2011, $9,430 in March, 2011, $11,732 for April, 2011, $12,180 for May, 2011, $8,080 for June, 2011, and $11,984 for July, 2011 (Docket Nos. 21, 24, 25, 36, 51, 55, 68, 76, 108, 109, 110). The operating

collateral since the date on which the court prohibited use of cash collateral.  He testified that he presently has paid for water and common area electricity and maintenance for the Prospect Townhomes from his personal funds.

On January 6, 2011, Debtor proposed a plan of reorganization (Docket No. 29).  Debtor's plan was amended on May 18, 2011 (Docket No. 71).  Both plans provided that Debtor would retain its interest in all of the property for 18 months, without making any payment to TCB, and to continue affirmative litigation against TCB.  The plans both called for Debtor to satisfy TCB's claim either by defeating it in litigation, paying it in full after some townhomes are sold, or by Debtor's "surrender of the cash equivalent of property securing TCB's allowed claim."  At the confirmation hearing on June 21, 2011, confirmation of Debtor's amended plan was denied.  Debtor has not filed a subsequent plan of reorganization.

Karna testified that he has knowledge of the market for townhomes in the area in which the Prospect Townhomes, the Riverside Lot, and the Calumet lot are located.  He testified that his knowledge is based on his investigation of the market in the area, through the web sites of the Houston Association of

---

reports for May through July, 2011 were filed after the date of the hearing on the instant motion.

Realtors[3] and the Harris County Appraisal District. He testified that he believes property values in the area are increasing, and have been increasing for the last five years.

Karna testified that his primary source of employment is as a project manager and consultant in New York. He testified that he spends four days a week in New York, and travels to Houston on the weekends. He testified that he began obtaining knowledge of the real estate market in 2006, in preparation for Debtor's purchase of the properties it now owns.

Karna testified that he believes the aggregate value of the Prospect Townhomes, the Riverside Lot, and the Calumet Lot is $3.03 million. He testified that Debtor scheduled the properties with a value of $2.93 million on the petition date. He testified that he believes the property has increased in value due to completion of the townhome construction.

The court accords little weight to Karna's opinion as to the value of the townhomes. Karna's self-serving opinion is not based on technical knowledge of the marketplace, but rather anecdotal evidence based on experience of a relatively recent vintage, and for a period of time during which he has been away from the Houston, Texas area for a significant amount of time.

Karna testified that TCB had sought to perform an

---

[3]The court notes that the site available to the public lists the list prices of properties available for sale.

appraisal of the property.  He testified that he had been unable to obtain permission from the tenants in the Prospect Townhomes to gain access to the townhomes to allow an appraisal to take place at a time when he would be in Houston, and could be present.

Barnett testified that, with the accrual of postpetition interest, Debtor's debt to TCB was approximately $2,785,000 as of July 15, 2011.  He testified that Debtor's debt to TCB was accruing interest at approximately $33,000 per month.

In the instant motion, TCB seeks relief from stay, both to exercise remedies under applicable law as to the Prospect Townhomes, the Riverside Lot, and the Calumet Lot, and also to continue its litigation against Debtor and Debtor's guarantors. TCB seeks relief under Section 362(d)(1) of the Bankruptcy Code, for cause, including a lack of adequate protection.

## Conclusions of Law

Section 362(d)(1) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. §§ 362(d)(1).

Section 362(g) of the Bankruptcy Code provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
> > (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> >
> > (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

Cause is not defined in the Bankruptcy Code, and must be determined on a case by case basis based on an examination of the totality of circumstances. In re Reitnauer, 152 F.3d 341, 343 n. 4 (5th Cir. 1998); In re Mendoza, 111 F.3d 1264 (5th Cir. 1997).

In determining whether to lift the automatic stay to allow litigation against a debtor to proceed outside this court, the court considers whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor, and whether the creditor has a probability of prevailing on the merits of the case. In re Namazi, 106 B.R. 93 (Bankr. E.D. Va. 1989).

In determining whether a secured creditor's interest is adequately protected, courts analyze the property's "equity cushion"-the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims. Matter of Mendoza, 111 F.3d 1264 (5th Cir. 1997).

In the instant case, presuming Karna's aggregate valuations of the Prospect Townhomes, the Riverside Lot, and the Calumet Lot are correct, Debtor had an equity cushion of $375,694.51 on the petition date.[4]  On the date of the hearing on the instant motion, again presuming that Karna's aggregate valuations are correct, Debtor had an equity cushion of $17,432.48,[5] excluding the effect of any postpetition interest allowable on the claims of the taxing authority and the property tax lender, and excluding the accrual of additional interest on the TCB debt after July 15, 2011.

In the instant case, if an equity cushion continues to exist to protect TCB's interest in the property, such cushion is rapidly eroding due to the accrual of postpetition taxes, as well as interest on the debts owed to TCB and creditors with senior liens and Debtor's failure to make any payments.[6]  The instant case has been pending for over a year.  Debtor has not proposed a confirmable plan and has no plan presently before the court.

---

[4] This amount consists of the scheduled value of $2.93 million, less the sum of the amounts of the proofs of claim filed by TCB ($2,416,737.97), the taxing authority ($122,063.58) and the property tax lender ($15,503.94).

[5] This amount represents the $3.03 million value, less the sum of TCB's asserted claim including postpetition interest ($2,875,000), and proofs of claim of the taxing authority ($122,063.58) and the property tax lender ($15,503.94).

[6] Under Section 506(b) of the Bankruptcy Code, the holder of an oversecured debt is entitled to postpetition interest.

Debtor, when authorized to use cash collateral, used it for a purpose not authorized under the cash collateral budget. As to the pending litigation, there is no evidence that any hardship will result to the Debtor independent of that otherwise addressed in authorizing TCB to exercise its applicable rights with respect to the property. There is a hardship to TCB in not permitting a final resolution of the issues between Debtor and TCB. There is no evidence as to who would prevail on the merits as between Debtor and TCB. The court concludes, based on the totality of the circumstances, that the stay should be lifted both to allow the litigation between the parties to proceed, and to allow TCB to exercise its remedies under applicable law.

Based on the foregoing, a separate Judgment will be entered granting the "Motion of Texas Community Bank for Relief from Automatic Stay of Act Concerning Property and Other Acts" (Docket No. 85).

Signed at Houston, Texas on September 6, 2011.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE